Good morning Your Honors and may it please the Court. This appeal is taken with respect to that portion of the lower court's decision dated January 17, 2024, which dismissed counts 1, 3, 4, 5, 6, and 8 of the complaint, as well as the denial of leave to repleave. The conditional final approval for Medford Gardens Subdivision 1 required the developer to post performance bonds in the combined amount of $541,000, as well as presenting dedication papers at the time of the posting. Also, Grand Medford also posted a highway bond to guarantee certain road improvements. When the road improvements had been completed, the town board elected not to return the highway bond, but instead, by fiat, to keep it as a performance bond. Notwithstanding that it far exceeded the performance bond requirements. Let me just see if I can focus you on what I think are the claims that are on appeal, because you conceded that to the extent the district court found that certain claims were not ripe, including whether or not the performance bond should be released, that you're not challenging that, right? We're not challenging it. All right, so I think you can correct me if I'm wrong. I think the three things that you are challenging, that you briefed at least, are that the additional work that the town was requiring under the performance bond was wrong, right? That that was a due process violation, that they're requiring you to perform additional, your clients perform additional work. That's one claim, right? That is correct, yeah. All right. And then you have a claim regarding the wetlands, right? Yes. The due process claim. I'm going to rely on the brief for that. All right. So let me just, and then there's a substantive due process claim that you challenge in the brief with respect to the certificates of occupancy, right? Both the certificates of occupancy and the return of the debt. Right. Those are the three you briefed. You did put one sentence in on the protection and the retaliation claims, but that's not really briefing a claim, right? All you say is, you know, for the reasons set forth above, but those are separate claims. You didn't really brief those. Again, I, you know, I will make my contentions. I don't, you know, the contents of the brief are what they are. All right. So let me ask you about the additional work on the bond. The district court concluded that, first of all, the performance bond is governed by New York contract law. You agree with that, right? No, I do not. It's not? No, I do not. All right. Why is it not? The, because the cases that Judge Ross relied on. In Arch Insurance, we said, in New York, a bond is a contract, and we therefore look to standard principles of contract interpretation to determine the rights and obligations of a party under the bond. That's what we said, right? That is what Judge Ross said. No, that's what we said in Arch. That's what I'm quoting from one of our own decisions. So how could that be wrong? I, you know, I, we cited the case law from this court. I believe that required the opposite conclusion. The point being, the important point being that the, I mean, it's obviously not a contract where one party can add to the requirements without, you know, without any additional benefit to the other party. So, you know, it's, that's not a matter of contract law. That's, you know, if it were contract law, I suppose this would be easier. But that's, that's not what's happening here. The town is not treating this as a matter of contract. They are free to impose whatever requirements they choose. So any time there's a dispute in a performance bond about whether there's a breach of a provision or this needs to be done or that needs to be done, that's going to create a due process claim in federal court? Is that what you're suggesting? Not any time there's a dispute. Whenever there's a dispute that's regarding the attempt to impose a requirement that's ultra-virus and unconstitutional, improper for any of those things. Like in this, what they're doing, what the town is elected to do here, what the town, what has become the town of Brookhaven's modus operandi, is to treat these performance bonds as perpetual. They, and they're, they go on, they are not released until the planning department says you can have a hearing now. And the planning department doesn't say, by the way, there is no more planning board in the town of Brookhaven. Why don't you just bring an Article 78 proceeding? Because the. You actually brought one in 2009. We brought many. All right. We brought many. We've said many times that an Article 78 proceeding is an adequate post-deprivation due process remedy for purposes of the due process clause. Except that the town, as you're aware, the town code provisions are also at issue. They authorize the extent that the board to extend the term of the performance bond and what the town has. I know it's arbitrary. The extension is what I think you're claiming is that they just hold it forever and it's arbitrary, irrational, not in accordance with the terms of the bond. That would be something you could get relief in an Article 78 for, right? That's exactly what Article 78 is for. That's why we're here, because we cannot, we could not get that relief. Because that's why the arguments regarding Sections 277 and town code Section 17. Did you file an Article 78 to try to get release of the performance bond or not? The town is under no obligation to hold that hearing. Therefore, we cannot compel, there is no final determination and nothing for us to Article 78. That's the problem. It's an endless loop. There's no final determination because they make sure there is no final determination. That the bonds continue at infinitum and whatever requirements it is, proper, improper. In fact, there's a number of examples. In this case, although these were the subject of other proceedings with respect to between these parties, there were requirements for off-site improvements. Those are not permissible. There were requirements for. But I guess I'm still, and Judge Bianco raised this with you before, the idea that these performance bonds constitute constitutionally recognized property, right? What is your support for that? Because in the face of cases where this court has explicitly said that performance bonds of this kind are contracts, the idea that you're converting that into a constitutional claim, that's the part I guess I'm struggling with. That we're converting it into a constitution. We have no ability to enforce that contract. It's not a contract. Every sort of alleged wrong does not get you into a constitutional violation. And so if there is, if this is construed as a contract, then perhaps there's a breach of contract Article 78 provision. But to get into court on the idea that this is a violation of constitutional rights, when the property that is at issue, we've already said, is a contract. It is not a constitutionally recognized property, right? This court has held that before there is, that if the deprivation of rights, including the right to our property, to the appellant's property, cannot occur in absent a reasonable opportunity to contest and to address this, the failure to properly, you know, the failure to honor the statutory obligation to return to, I mean, we provide these, each of the items that are secured by the bond are subject to inspection by the town. Here, in each and every instance, with regard to the items that are secured by these bonds, they were inspected and approved by town inspectors. The only issues here are the additional requirements that the town, first, the additional requirements that are mounted on top of what the bond, the specific terms of the bond. The bond is very explicit as to what it secures. Those items, again, are each inspected and approved with respect to both of the approvals that issue here. The only issue is the ability to retrieve, to get off the bond, to retrieve the, by now, several million, you know, with the. May I ask just one question? You allege the town has a purported policy, a pattern in practice in this policy, correct? Yes, I do. That it's a pattern and policy, and I think you just said that today in your argument. Yes, to hold the bonds ad infinitum, yes. Yet in your briefing, you say that your client is the only one who's been treated this way and that all the other developers are not subject to this policy. So I'm trying to understand that discrepancy. It's either a pattern in practice and policy that applies to everyone, or is your client being singled out? Because if your client is being singled out, then you haven't made out a claim. So I'm trying to understand, which one is it? You've stumped me to some extent because I'm trying to remember how it is we address that in the brief. It is certainly a pattern and practice on the part of the town. I'm a land use attorney, and this is something we see constantly, that we have bonds that are kept for 20 years when 277 limits the duration, the permissible duration of a performance bond to three years after which the town is required to either default or release. Here, they're using their procedures to, you know, they're using an improper interpretation of authority under 17CNF to allow them to continually, and actually without board action, so they're not even complying with 17CNF, to continually renew the bond regardless to, you know, I've seen it going on for 20 years. I thought, Judge Kahn, I was thinking that this is with respect to the substantive due process claim with respect to the certificates of occupancy, that there was a delay. But in your complaint, you say that this alleged policy was not published anywhere and was not applied to the subdivisions of dozens of other similarly situated Brookhaven developers. Yes, I'm sorry. That's what we're referring to. So it was specifically the CO policy. Yes, so how could they have a Monell claim if, as Judge Kahn pointed out, it's not being applied to dozens? That suggests that you're being singled out, so you don't have a Monell claim if you're the only one, right? We're talking specifically about the COs, the COs. Yes, yes, yes. The Monell claim, I don't think where Judge Ross, I believe, erred in her determination of that issue was that she had in front of her correspondence from various town officials, including the assistant town attorney and a number of others, each of which were referenced in the complaint, where she says it's not published. None of those were in the complaint, though. You didn't allege any of that in the complaint. In your briefing, you had a couple of e-mails, right, that you referenced in your briefing. It's not in the complaint. Yes, we did not. We referenced the correspondence, the dates of the car, and all of that was described in the complaint. I don't think it was appropriate for Judge Ross to decide that that fact didn't exist. No, it was not described in the complaint. It was not, those e-mails were not in the complaint. No, the e-mails themselves were not appended to the complaint, but the facts of the dates of the correspondence, they were described. Yeah, if you could, when you come up for rebuttal, just point me to those in the complaint, where those e-mails were described in the complaint. I actually don't have my computer with me. I don't have time for that. They took your computer? No. All right, that's fine. But that was the point, that, you know, she obviously knew about them. She knew about them from somewhere. Those weren't policymakers anyway. It was like an assistant engineer, right? No, it was a number of people, including the assistant town attorney, who said this is town policy. They said it a number of times in a number of different contexts, that it kept coming up. This is our, this is town policy.  We're allowed to do this. It's town policy. All right, thank you, Mr. Steiner. All right, we'll hear from Mr. Hill. May it please the court, Timothy Hill, Perillo Hill, for the appellee, Town of Brookhaven. I think as the court has identified, the principal issue here is the absence of any constitutionally protected property interest to which a due process or any of the other variants of the claims here have been asserted. The claim, as it's articulated, is really for the release of the performance bonds, which is a verb, right? The actual bonds themselves are by their very nature contingent and contractual, as the court's questions have focused on. The performance, there's obviously a test as to whether that performance has been satisfactory or not, and that goes to the discretion that is involved in deciding whether and when to release those. And here, that has been done in part. Some of the bonds have been released upon the demonstration of satisfactory performance. But in the absence of a right that is certain, by which they are certain to have that release entitled to them, there is no constitutionally protected interest. And that cuts through really all of the claims, due process, equal protection, or any of the other claims here. Well, you could have whether or not there's a property interest in the denial of certificates of occupancy, for example. That could create a separate property interest inquiry that the district court didn't reach. In other words, the district court on that one said there's no Monell. There's no allegations that are sufficient to satisfy Monell, but did not reach at least to that question, right? That's a different property interest question than additional work under the bond, right? That's true, yes. Okay. But the— Well, let me ask you about that one. You heard what he said, that they had some e-mails. I don't think it was in the complaint, but in the brief, what's your response to that? That suggests that there was some type of policy. That is not a policy. A policy, right, is from the senior decision makers of the town and is demonstrated over a widespread application. That has not been demonstrated here. The issuance of a certificate of occupancy is also characterized by discretion and the satisfaction of the requirements for that, which are not demonstrated to have been satisfied here. What about the Article 78? I know it wasn't the basis for the district court's decision, but his suggestion, Mr. Stern suggested that they're stuck. They can't get any relief. The town is holding the bond, the release of the bond, and federal court is their only option. What's your response to that? I just think that's not accurate. They have availed themselves of that remedy at various other points regarding other issues in this longstanding development. And here, the relatively recent events of the punch list items, those are of recent vintage and could have been the subject of an Article 78. So if they think the punch list is arbitrary, inconsistent with the bond, they could bring an Article 78, right? Yes. And those items, that could have been done, and by past performance, might have expected it to have been done, but they elected a different route here, and I don't believe that the federal court is here to hear those types of disputes. And beyond the punch list items, there are other conditions for the release that haven't been addressed either. And the wetland designation, that's not a property interest. The district court didn't decide that on property interest grounds. It decided that the eminent domain procedures of New York State were constitutionally sufficient, right? Correct. So to the extent that's a due process claim, they are getting all of that due process in a very formal statutory scheme that's set up for just that purpose. Which they did not invoke. Exactly. All right. Thank you. Thank you. Okay, Mr. Sterling, we have two minutes left. A few things to get to. At the outset, counsel represented that some portion of the bonds were released upon performance. That's actually not true. What he's referring to is the reduction in the Quigley bond was negotiated because the bond demand was for included items that had already been completed and approved. There is no, I repeat, there's no Article 78 remedy available because there's no final determination. There's no final determination until you have a hearing denying the release of the bond. And there's no hearing to authorize the release of the bond until the town agrees or the planning board agrees that you can have it after satisfaction of whatever conditions, including those outside the bond, they elect to impose. I also, as referenced in the brief, I want to be quick because I don't want to miss this. The eminent domain proceedings, as we argued, do not represent, do not provide a forum to challenge the wetlands determination. Wasn't there an ability to, prior to the eminent domain proceedings, at the stage of being designated wetlands, you did receive notice of that. And wasn't there a mechanism to object to that at that stage of the process? There was no notice. We described the notice that we received. It was a town employee saying this is wetlands now. That's really what happened here. They just, this is a lot on a file map, an approved lot in an approved subdivision. And the town had required the builder to pile all the dirt onto one of the lots and then designated that lot as wetland, the effect being to reduce its value because it no longer has any value for building purposes. So that reduces the price they have to pay. So that's, you know, and there was no, you know, I believe there is no, that the eminent domain proceedings not provide that, a forum to adjudicate that issue. Finally, the, as far as the court has returned to the issue of contract, there is no, we cannot comply with the contract. We cannot, you know, under the interpretation, under the code provisions as they exist, we can't comply with the contract. And therefore, contract doesn't afford us the remedy that we need. And with, just let me finish by bringing up the point. I believe that Judge Ross heard by not allowing us the opportunity to replead. I don't see, you know, I think that the appellant should have been granted that opportunity. All right, thank you Mr. Stern. Thank you Mr. Hill. We'll reserve decision. Have a good day. Thank you.